**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MEDARC, LLC, as Collection Agent for** | § | |
| **Jeffrey H. Mims, Trustee of the Liquidating** | § | |
| **Trust of Revolution Monitoring, LLC,** | § | |
| **Revolution Monitoring Management, LLC,** | § | |
| **and Revolution Neuromonitoring, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-CV-0159-N-BH** |
| | § | |
| **UNITEDHEALTH GROUP** | § | |
| **INCORPORATED, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court are *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint*, filed April 12, 2021 (doc. 26), and *Plaintiff's Motion for Leave to File a Surreply*, filed June 14, 2021 (doc. 37).  Based upon the relevant filings and applicable law, the motion to dismiss should be **GRANTED in part** and **DENIED in part**.  The motion for leave to file a sur-reply is **DENIED as moot**.

## I. BACKGROUND

MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (Plaintiff), brings this action against UnitedHealthcare, Inc., Care Improvement Plus Group Management, LLC, Sierra Health and Life Insurance Company, Inc., and UMR, Inc. (collectively Defendants), to recover payments for out-of-network medical services

---

[1]By order of reference dated January 28, 2021 (doc. 3), this case has been referred for full case management.

rendered to patients covered by health insurance plans. (*See* doc. 18.)[2]

## A.    **Medical Services**

Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (collectively Revolution) were medical providers of intraoperative neurophysiological monitoring (IONM) medical services for operations around delicate parts of the nervous system. (*Id.* at 4-5.)  IONM technology provides "real-time" monitoring of the nervous system during surgery, which alerts surgeons of potential evolving neurologic injury to allow for corrective action to avoid permanent injury or death. (*Id.* at 5.)  These medical services are primarily utilized in spinal, cranial, facial, throat, and peripheral surgeries. (*Id.*)

Defendants are businesses that provide, underwrite, and administer health insurance benefits of Texas residents, including patients who received Revolution's IONM medical services (Insureds). (*Id.* at 6.) Most of the Insureds are covered by private employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA), but some of them are covered by non-ERISA health benefit plans categorized either as "government plans," by which "state or local government entities contract with Defendants to administer health benefits to their employees," or as "private plans," by which "individuals contract with Defendants to administer health benefits." (*Id.* at 6-7, 21.) The health insurance plans are either fully-insured plans in which an insurance company assumes financial responsibility for paying medical claims and administrative costs, or self-insured plans in which an employer acts as the insurer and assumes financial responsibility for payment of medical claims. (*Id.* at 6.)  Generally, insurance companies like Defendants are retained to administer self-insured plans and are provided "discretionary authority over the management of

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

the plans, the disposition of the plan assets, and the adjudication of claims." (*Id.*) The plans obligate Defendants to pay in accordance with the Insureds' rights to receive reimbursement for out-of-network care, and they establish an allowable amount to be paid for medical services provided by out-of-network providers like Revolution. (*Id.* at 12.) As an out-of-network provider, Revolution did not have pre-determined rates under the plans. (*Id.* at 5, 12.)

From between June 2014 and July 2017, Revolution provided out-of-network medical services to Insureds and followed the same process. (*Id.* at 8.) It received orders from physicians to schedule its IONM medical services in connection with Insureds' medical procedures to be performed at physicians' surgical facilities. (*Id.*) After receiving orders and before rendering medical services, Revolution obtained verification from Defendants that "each patient was covered by a health benefit plan that provided out-of-network benefits," that "the particular procedures were covered by the relevant health benefit plan," and that it "would be paid in accordance with the health benefit plan." (*Id.*) During the verification process, Defendants did not identify or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including any anti-assignment provisions. (*Id.*) Plaintiff alleges that "Revolution would not have provided these services to these patients without first obtaining this verification from Defendants." (*Id.* at 8-9.)

"As a matter of policy," each Insured also executed an "assignment of benefits" form (AOB), assigning to Revolution, in relevant part, "(1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5)

the reasonable assistance of the patient in pursuing third-party payments." (*Id.* at 9.)

After medical services were performed, Plaintiff or Revolution submitted claims for payment through Defendants' designated claims-handling channels, but the claims were either denied or drastically underpaid. (*Id.* at 10.) Appeals of the non-payment or underpayment of the claims via Defendants' designated appeals channels were also denied. (*Id.* at 11.) "Defendants failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, including but not limited to any anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination." (*Id.*) They maintained that "(1) the claim was paid in accordance with the Allowable Amount; (2) the administrator maintained the prior decision; or (3) the claim was processed correctly." (*Id.*) Revolution billed Defendants more than $60,000,000 for services rendered to Insureds but was paid less than $1,000,000; this was less than 2% of the amount billed. (*Id.* at 12.)

**B.    Bankruptcy**

Between September 27, 2018 and October 5, 2018, Revolution filed for Chapter 11 bankruptcy in the Northern District of Texas. (doc. 18 at 18.) On July 23, 2019, the bankruptcy court entered an order confirming the Debtors' Second Joint Plan of Reorganization (Bankruptcy Plan), which among other things, provided for the creation of a Liquidating Trust, the appointment of Jeffrey H. Mims as Liquidating Trustee, and the appointment of Plaintiff to serve as Collection Agent. (*Id.*)  On August 5, 2019, the Liquidating Trust Agreement (LTA) was filed in accordance with the Bankruptcy Plan. *See In re Revolution Monitoring, LLC, et al.*, No. 18-33730-hdh-11 (N.D.

Tex. Bank.) (Revolution Bankr., doc. 146).

Under the Bankruptcy Plan, "all assets of the Debtors, including all cash, accounts receivable, patient medical records, billing records, banking records, billing ID's, billing numbers, medicare ID's, software licenses, passwords, and any other documents, licensure, or information that Debtors have previously used and relied upon, or that is necessary to effect the billing and collection of the Accounts Receivable, shall be transferred, granted, assigned, conveyed, set over, and delivered to the Liquidating Trust . . . ." (*Id.*, doc. 139 at 16.)  As Collection Agent, Plaintiff had "full authority regarding the Accounts Receivable to: (i) bill, rebill, and collect the Medical Receivables; (ii) bring lawsuits and settle lawsuits; (iii) negotiate, bring, enforce and settle claims, together with all lawful actions necessary for collection thereof; (iv) enter into collection agreements with third-party collection agencies; (v) enter into engagement agreements with law firms to commence legal adjudication of collections, on behalf of the Debtors and the Liquidating Trustee." (*Id.* at 17-18.)  The net proceeds collected were to be used to pay creditors. (*Id.* at 18.)

Under the Bankruptcy Plan, Plaintiff also entered into a payout agreement with Xynergy Healthcare Capital II LLC (Xynergy). (*Id.* at 28.) Prior to bankruptcy, Revolution had entered into a Healthcare Receivables Master Purchase and Sales Agreement with Xynergy, providing its accounts receivable as security, and Xynergy had sued to enforce the agreement.  (*Id.* at 27.)  On May 18, 2018, it obtained a favorable judgment against Revolution in the principal amount of $1,681,767.57 (Judgment). (*Id.*)  In the payout agreement under the Bankruptcy Plan, Xynergy assigned Plaintiff "all right, title, and interest to any and all: Financing Agreements, UCC Liens, Lawsuits, Judgment, and Claims in Bankruptcy, as well as any and all documents, claims, causes of action whether or not filed, pending or resolved, judgments, orders, contracts, contract interests,

contract positions, security agreements, security interests, security positions, liens whether or not

perfected, collateral, all legal and equitable rights or interests, debts, bills, receivables, proofs of

claim, and any other rights or interests appurtenant thereto, arising out of or relating to Revolution."

(*Id.* at 28.)  Plaintiff would be paid "solely from the proceeds received from the collection of the

Accounts Receivable, an amount up to and including the amount of the Judgment." (*Id.*)

Plaintiff originally filed this action as an adversary proceeding in bankruptcy court on

September 18, 2020. *See MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the*

*Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and*

*Revolution Neuromonitoring, LLC v. UnitedHealth Group Incorporated, et al. (In re Revolution*

*Monitoring, LLC)*, No. 20-03114 (Bankr. N.D. Tex.) (Adversary Proceeding, doc. 1). Defendants

moved to withdraw the bankruptcy reference under 28 U.S.C. § 157(d), and on January 12, 2021,

the bankruptcy court recommended that the reference be withdrawn in its entirety. (*See* docs. 1-1,

1-3.) Although the bankruptcy court believed that it had subject matter jurisdiction in the adversary

proceeding under 28 U.S.C. § 1334(b) "because the claims are related to a case under title 11," it

noted that it lacked authority to enter final orders or a final judgment under § 157(c). (doc. 1-3 at

3.) It also noted that the proceeding did not concern bankruptcy law, its "connection to the

underlying bankruptcy cases [was] fairly attenuated," and the bankruptcy court did not have

significant familiarity with the relevant facts of the proceeding. (*Id.*) It concluded that withdrawal

was warranted because "either the District Court Judge or a Magistrate Judge would be able to

handle [the pre-trial] matters more efficiently because of a greater familiarity with ERISA and

related federal law." (*Id.* at 4.) On February 3, 2021, the district court adopted the recommendation

of the bankruptcy court and withdrew the reference. (doc. 7.)

6

C.    **Claims for Benefits**

Plaintiff's second amended complaint asserts claims for benefits under ERISA, 29 U.S.C.

§ 1132(a)(1)(B), for attorneys' fees under § 1132(g)(1), and for breach of contract. (doc. 18 at 18-

23.) It alleges that "Defendants were the claim administrators and administered each and every claim

at issue in this lawsuit," and that they underpaid Revolution on more than 300 claims totaling

approximately $60,000,000 in rendered medical services which "were medically appropriate and

necessary [and] covered by the applicable plan terms, and [which] should have been paid to

Revolution as the [ ] Insureds' lawful assignee." (*Id.* at 1, 7, 17, 21.)  It also asserts that Plaintiff has

standing to pursue this action because Revolution received valid assignments of all the benefits

provided to Insureds under the plans, which were subsequently assigned to Plaintiff.  (*Id.* at 19-21.)

Attached to the second amended complaint is a spreadsheet of the unpaid medical claims, which

includes (a) names and member identification numbers of the Insureds, (b) dates of service, (c) the

services rendered and the rendering providers, (d) claim numbers, (e) the plans that allegedly insured

or administered the claims, and (f) the unique Case ID numbers for any alleged appeals for insurance

claims. (*See* doc. 21.)[3]

Nine of the unpaid claims for which Plaintiff seeks payment relate to a self-funded benefit

plan operated by the Employees Retirement System of Texas (ERS)[4] and governed by the Texas

Employers Group Benefits Act (ERS Act),  Tex. Ins. Code § 1551.001, *et seq.*, i.e., the HealthSelect

of Texas (In-Area) Benefits Plan (ERS Plan Claims). (*Id.* at 1200-13)  Fourteen claims relate to the

---

[3]This exhibit contains protected health information and is filed under seal. (*See* doc. 20.)

[4]ERS is a government entity established by the Texas Legislature, as mandated under the Texas Constitution. *See* Tex. Const. art. XVI, § 67 ("The legislature shall establish by law an Employees Retirement System of Texas to provide benefits for officers and employees of the state and such state-compensated officers and employees of appellate courts and judicial districts as may be included under the system by law.").

health plans of various governmental entities (Governmental Plan Claims).[5] (doc. 18 at 7; doc. 21 at 1200-13.)  One hundred and thirty-six of the claims at issue relate to ERISA plans (ERISA Plan Claims).

On April 12, 2021, Defendants moved to dismiss Plaintiff's second amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (doc. 26.)  Plaintiff responded on May 3, 2021, and Defendants replied on June 4, 2021. (docs. 30, 36.)  On June 14, 2021, Plaintiff sought leave to file a sur-reply.  (doc. 37.)

## II.  RULE 12(b)(1)

Defendants move to dismiss the ERS Plan Claims and the Governmental Plan Claims under Rule 12(b)(1) for lack of jurisdiction. (doc. 27 at 11-20.)

## A.    Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S.

---

[5]The governmental entities include the City of Denton, City of Allen, City of Plano, City of Dallas, City of Fort Worth, City of Frisco, Collin County, the North Texas Tollway Authority (NTTA), Keller Independent School District, and Lamar Consolidated Independent School District. (*See* doc. 21 at 1200-13.)

500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.*

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the

party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendants rely solely on Plaintiff's second amended complaint in support of their motion to dismiss for lack of subject matter jurisdiction.[6] The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13; *see also Crowder v. Vill. of Kaufman, Ltd.*, No. 3:09-CV-2181-M, 2010 WL 2710601, at *1 (N.D. Tex. July 7, 2010) (citations omitted) ("A 12(b)(1) motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the allegations in the pleading, presuming them to be true.").

## B.    Lack of Jurisdiction

Defendants argue that the Court lacks jurisdiction to hear the nine claims relating to the ERS Plan. (doc. 27 at 11-15.)

As noted, the ERS Plan Claims are governed by the ERS Act, the administration and implementation of which are vested solely in the board of trustees of the ERS (ERS Board).  *See* Tex. Ins. Code § 1551.051.  It has the authority to "establish and administer health benefit plans for state employees and their dependents, as well as to 'design, implement, and monitor health benefit plan features intended to discourage excessive utilization, promote efficiency, and contain costs.'" *McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 9257154, at *4 (S.D. Tex. Dec. 14, 2015) (citing Tex. Ins. Code §§ 1551.051, 1551.055). It also has the power to "contract with an entity to act for the board as an independent administrator or manager of the coverages, services, and benefits authorized under [the ERS Act]." Tex. Ins. Code §

---

[6]Defendants attached to its motion a color-coded version of the spreadsheet that was attached to the second amended complaint. (*See* doc. 25-1.)

1551.056.[7]

The ERS Act "expressly grants ERS exclusive jurisdiction of disputes relating to payment of a claim." *Employees Ret. Sys. of Tex. v. Duenez*, 288 S.W.3d 905, 909 (Tex. 2009). It provides that ERS's executive director "has exclusive authority to determine all questions relating to enrollment in or payment of a claim arising from group coverages or benefits provided under this chapter other than questions relating to payment of a claim by a health maintenance organization." Tex. Ins. Code § 1551.352. The executive director's determination can be appealed only to the ERS Board. *Id.* § 1551.355. "Moreover, '[t]he plain language of the ERS Act makes clear that the administrative appeals process is the 'exclusive' means of resolving a claim for payment of ERS-derived benefits.'" *Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, No. 5:17-CV-1016-DAE, 2018 WL 2222854, at *5 (W.D. Tex. Apr. 20, 2018) (quoting *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 676 (Tex. 2006)); *see also* Tex. Ins. Code § 1551.014 ("The remedies provided under this chapter are the *exclusive* remedies available to an employee, participant, annuitant, or dependent.") (emphasis added). "Until the party has satisfied the exhaustion requirement, the trial court lacks subject-matter jurisdiction and must dismiss without prejudice those claims within the agency's exclusive jurisdiction." *Blue Cross Blue Shield of Tex.*, 201 S.W.3d at 676. "Even after an aggrieved party has exhausted his administrative remedies, judicial review of the decision is statutorily mandated 'in a district court in Travis County.'" *Mission Toxicology, L.L.C.*, 2018 WL 2222854, at *5 (quoting Tex. Ins. Code § 1551.359).

Plaintiff argues that because the ERS Plan Claims relate to the Revolution Bankruptcy, they

---

[7] The ERS Act defines an "administering firm" as "a firm designated by the board of trustees to administer coverages, services, benefits, or requirements in accordance with this chapter and the rules adopted by the board of trustees under this chapter." *Id.* § 1551.003(1).

were properly before the bankruptcy court in an adversary proceeding under 28 U.S.C. § 1334(b). (doc. 30 at 9-10). It fails to provide any legal authority in support of its claim that federal jurisdiction exists over those claims, however.  The federal courts that have considered the issue have dismissed claims arising under the ERS Act for lack of jurisdiction. *See Mission Toxicology, L.L.C.*, 2018 WL 2222854, at *5; *McAllen Anesthesia Consultants, P.A.*, 2015 WL 9257154, at *9; *see also Outpatient Specialty Surgery Partners, Ltd. v. Unitedhealthcare Ins. Co.*, No. 4:15-CV-2983, 2016 WL 3467139, at *6 (S.D. Tex. June 24, 2016)(noting the plaintiff's concession that any ERS claims had to be brought in state court and dismissing its claims under an ERS plan).  This court agrees with and adopts their reasoning.

Because the ERS Act provides exclusive remedies for disputes related to payment of claims, and an aggrieved party can only seek judicial review in a state district court in Travis County, jurisdiction to consider the merits of the nine unpaid claims that relate to payment for medical services covered under an ERS Plan is lacking.

## C.    Governmental Immunity

Defendants next argue that because the governmental entities that provided the government health plans are immune from suit, "UHS, as a third-party administrator for these governmental plans is entitled to the same governmental immunity" with respect to the 14 Governmental Plan Claims. (doc. 27 at 18-19.)[8]

In Texas, "[s]overeign immunity and governmental immunity are related common law doctrines protecting the government from suit." *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). "Sovereign immunity protects the state and its various divisions, such as agencies and boards,

---

[8]Because dismissal of the ERS Plan Claims has been recommended, Defendants' arguments that they are immune from suit in connection with those claims need not be considered. (*See* doc. 27 at 15-17.)

from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). Sovereign immunity[9] encompasses both immunity from liability and immunity from suit. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). "Immunity from liability protects governmental entities from judgments, while immunity from suit completely bars actions against those entities unless the Legislature expressly consents to suit." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012). A defendant asserting immunity from suit bears the burden "to establish that it is a governmental entity entitled to governmental immunity." *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 305 (Tex. 2014); *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (explaining the burden shifting analysis used to resolve a governmental entity's challenge to a court's power to hear a case).[10]

While Texas courts have, "at times, extended governmental immunity to shield additional actors beyond the state and its political subdivisions," *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 82 (Tex. App.—Houston [1st Dist.] 2016, pet. denied), the Texas Supreme Court has not yet decided whether to recognize a "doctrine of derivative sovereign immunity for contractors," or how to determine the scope of that immunity, *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 733 (Tex. 2020).

---

[9]Even though sovereign immunity and governmental immunity are distinct concepts, courts often use the terms interchangeably. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (recognizing that sovereign immunity and governmental immunity are distinct concepts although courts often use the terms interchangeably).

[10]If the defendant satisfies that burden, the burden shifts back to the plaintiff "to establish, or at least raise a fact issue on, a waiver of immunity." *Church & Akin*, 442 S.W.3d at 305; *Miranda*, 133 S.W.3d at 227-28; *see also City of Lancaster v. White Rock Commercial, LLC*, 05-17-00583-CV, 2018 WL 6716932, at *3 (Tex. App.—Dallas Dec. 21, 2018, pet. denied) ("A movant bears the burden in its plea [to the jurisdiction] to establish that it is entitled to immunity, and if it meets this burden, the burden then shifts to the non-movant to establish, or at least raise a fact issue on, a waiver of immunity.").

*See Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 751 (Tex. 2019) ("We have suggested, but never held, that a non-governmental entity can share a political subdivision's immunity derivatively."); *Linebarger Goggan Blair & Sampson, LLP v. TinStar Title Inc.*, 05-19-00614-CV, 2020 WL 4013152, at *4 (Tex. App.—Dallas July 16, 2020, pet. denied) ("Although the supreme court has contemplated a private entity performing governmental functions might share a political subdivision's immunity derivatively, it has never so held."). Examining the circumstances under which derivative immunity might exist, however, it has noted that "the primary considerations some courts have used in deciding whether to extend sovereign immunity to private contractors are the government's control and the contractor's discretion." *Nettles*, 606 S.W.3d at 732 (citing *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124-26 (Tex. 2015)).

> In determining how those considerations come into play, courts that have considered the possibility of contractor immunity have looked to the pleadings: does the suit complain of a governmental decision the contractor was implementing, or of the manner in which the contractor performed a contractual obligation? Put simply, these courts ask (1) did the government tell the contractor what to do and how to do it (as opposed to the contractor having "some discretion in performing the contract"); and, if so, (2) did the contractor do as it was told? When the answer to both questions is yes, these courts extend a form of immunity to the contractor's conduct.

*Id.* (internal citations omitted); *see also Brown & Gay Eng'g*, 461 S.W.3d at 125 (noting that courts extending immunity to government contractors have generally found that "the alleged cause of the injury was not the independent action of the contractor, but the action taken by the government *through* the contractor" )(emphasis original). "[T]he parties' contract as well as evidence regarding the course of performance" are also considered. *Id.* at 734.

Assuming for purposes of this motion only that derivative sovereign immunity for contractors exists under Texas law, Plaintiff's second amended complaint alleges that "Texas government entities entered into contracts with Defendants to administer health benefits to their

14

employees," whereby "Defendants agreed to administer out-of-network benefits in accordance with the health benefit plans" and to pay claims for out-of-network services in accordance with the allowable amount found in the plans. (doc. 18 at 21.) It also alleges that with respect to all claims at issue in this lawsuit, "Defendants exercised discretion, control, authority and/or oversight in the administration of each of the claims," and they "interpreted the health benefit plan documents, distributed benefits under the plan terms, and determined the amount, if any, to pay Revolution for their medical services under these claims." (*Id.* at 7.) It contends that "Defendants' failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to government employees." (*Id.* at 22.) Because Defendants' motion to dismiss based on the complaint alone presents a facial attack, these allegations are presumed to be true and viewed in the light most favorable to Plaintiff. *See Paterson*, 644 F.2d at 523.[11] Under that standard, Plaintiff has sufficiently alleged that Defendants are not entitled to immunity, and that subject matter jurisdiction exists over the 14 Governmental Plan Claims.

While Defendants cite cases in which the NTTA and a school district were found to be entitled to governmental immunity, those cases did not involve providing government health plans. *See Reyes v. N. Tex. Tollway Auth.*, 830 F. Supp. 2d 194, 208 (N.D. Tex. 2011) ("As a political subdivision of the state, the NTTA is entitled to governmental immunity."); *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 735 (W.D. Tex. 2011) ("A school district, as a governmental unit, is protected by governmental immunity."). Defendants also cite cases where governmental entities, including a city, were found to be immune for offering health insurance to employees. *See*

---

[11]As noted, Defendants's motion includes a color-coded version of the spreadsheet attached to the second amended complaint. Even if considered, this document does not impact the immunity analysis.

*Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324-25 (Tex. 2006); *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507-08 (Tex. App.—El Paso 2014, no pet.). Even if governmental entities are entitled to governmental immunity for providing government health plans, however, that immunity is not automatically conveyed to Defendants.  "Serving public purposes . . . does not ipso facto equate to status as a governmental entity for governmental immunity purposes." *Rosenberg Dev. Corp.*, 571 S.W.3d at 750.  "An activity may constitute a governmental function for one type of political subdivision but not for another." *Id.* at n.86; *see also Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 814-15 (Tex. 1993) (recognizing the governmental function performed by a political subdivision might be a proprietary function if performed by a city).  Defendants must still show entitlement to derivative immunity.  *See Church & Akin*, 442 S.W.3d at 305 (a defendant asserting derivative immunity for actions performed on behalf of governmental entities has the burden to establish *both* that the governmental entities are entitled to governmental immunity, and that it can share their immunity derivatively).

Defendants also cite cases in which courts extended governmental immunity to third-party administrators for government health plans after finding that they lacked control over the administration of the health plans, and the relationships between the administrators and the government were such that the actions of the administrators were not independent and effectively attributed to the government. *See Foster v. Teacher Ret. Sys.*, 273 S.W.3d 883, 890 (Tex. App.—Austin 2008, no pet.) (finding third-party administrator was entitled to immunity because the terms of the plan administration agreement demonstrated that the governmental entity had exclusive right to determine the terms of the plan and the administrator had no financial stake in the approval

or denial of a claim); *Humana Ins. Co. v. Mueller*, No. 04-14-00752-CV, 2015 WL 1938657, at *5 (Tex. App.—San Antonio Apr. 29, 2015, pet. denied) (granting third-party administrator immunity where the plan administration agreement expressly limited the authority of the administrator in administering health plan claims); *McAllen Anesthesia Consultants, P.A.*, 2015 WL 9257154, at *8 (extending governmental immunity to third-party administrator that handled and processed ERS plan claims where it was clear that the administrator was "subordinate" to the ERS as it exercised limited discretion in initial coverage decisions and final decisions on benefit payments rested with the ERS); *Stegall v. TML Multistate Intergovernmental Employee Benefits Pool, Inc.*, 05-18-00239-CV, 2019 WL 4855226, at *5 (Tex. App.—Dallas Oct. 2, 2019, no pet.) (concluding that third-party administrator for government health plan had the same governmental immunity as the government entity because the plan documents demonstrated that, among other things, the administrator did not guarantee any benefits under the plan, it had no financial stake in whether claims are approved or denied, and the government entity made the final decision on denying claims for benefits). In those cases, however, courts looked to the provisions of the plan documents in determining that the third-party administrators were entitled to governmental immunity. Here, Defendants have not provided the plan administration agreements or other evidence of their terms to show that they lacked control over the administration of the health plans or no financial stake in whether claims were granted or denied, or that the governmental entities made the final decision regarding an award of benefits. Although they maintain that they "did not exercise discretion in processing claims" and the governmental entities "had the final authority to determine what services are covered," they do not provide any evidence in support of their factual attack on the allegations in the second amended complaint. (doc. 36 at 7.)

Because Defendants failed to meet their burden to show that they are entitled to governmental immunity, their motion to dismiss the 14 Governmental Plan Claims on this basis should be denied.

### III.  RULE 12(b)(6)

Under Rule 12(b)(6), Defendants move to dismiss 136 ERISA Plan Claims for failure to exhaust administrative remedies, and 102 claims as barred by the applicable statutes of limitations. (doc. 27 at 19-21.)

### A.    Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-duct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, a copy of the AOB and a spreadsheet of the medical claims in dispute are attached to the second amended complaint. (*See* docs. 18-1 at 27; 20.) Defendants also attach a color-coded version of this spreadsheet to its motion. (*See* doc. 25-1.) Because these documents are properly considered part of the pleadings or central to Plaintiff's claims, it is unnecessary to covert the motion to dismiss into a motion for summary judgment. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## B.    **Exhaustion of Administrative Remedies**

Defendants argue that Plaintiff failed to sufficiently allege exhaustion of administrative remedies for 136 ERISA claims in dispute. (doc. 27 at 19-20.)

"Claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (quoting *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000)); *see also Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *5 (N.D. Tex. June 28, 2016) (same) (citing *Coop Benefits Admin'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004)). "The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Denton v.*

*First Nat. Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir. 1985).  "However, '[t]he Fifth Circuit has held that exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust administrative remedies would be a patently futile course of action.'" *Texas Gen. Hosp., LP*, 2016 WL 3541828, at *5 (quoting *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 304 (S.D. Tex. 2011), *aff'd sub nom. by* 781 F.3d 182 (5th Cir. 2015)).

The Fifth Circuit has held that "[e]xhaustion of administrative remedies [ ] is not a jurisdictional bar; it is an affirmative defense." *N. Cypress Med. Ctr. Operating Co.*, 782 F. Supp. 2d at 303 (citations omitted); *see Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 (5th Cir. 2008) ("'[W]e have never construed the [ERISA exhaustion] doctrine strictly as a jurisdictional bar' and have referred to it as a 'defense.'") (citation omitted).  "The proper procedural vehicle for assertion of the affirmative defense of lack of ERISA administrative exhaustion is by way of properly supported motion for summary judgment." *Ford v. Freemen*, 388 F. Supp. 3d 692, 708 (N.D. Tex. 2019) (quoting *Thibodeaux v. Prudential Ins. Co. of Am.*, 2008 WL 5397236, at *1 (W.D. La. Oct. 30, 2008)); *see N. Cypress Med. Ctr. Operating Co.*, 782 F. Supp. 2d at 304 (quoting *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) ("[A] complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense.").  Nevertheless, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

Here, Plaintiff alleges that "Revolution properly and timely submitted claims through Defendants' designated claims handling channels," and after they "either denied or underpaid the claims, Revolution or Plaintiff properly and timely appealed the non-payment or underpayment of the claims through Defendants' designated appeals channels." (doc. 18 at 10-11.) It also alleges that "Defendants denied each and every appeal for each and every claim at issue in this lawsuit, thereby exhausting Revolution and Plaintiff's administrative remedies." (*Id.* at 11.)   Accepting these allegations as true, as required for purposes of Rule 12(b)(6) review, Plaintiff has sufficiently alleged that it exhausted its administrative remedies by pursuing the full administrative process for each claim before filing suit, and the motion to dismiss on this basis should be denied.

## C.    <u>Statutes of Limitations</u>

Defendants argue that 102 claims on the spreadsheet attached to the second amended complaint are barred by the applicable statutes of limitations. (doc. 27 at 20-21.)

Although limitations is also an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[ ] on the face of the complaint." *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)). "ERISA does not provide a statute of limitations for suits to recover benefits." *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 417 (5th Cir. 2019). Where federal law provides no specific limitations period, courts "apply the state statute of limitations most analogous to the cause of action raised." *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir.1992). The most analogous cause of action to Plaintiff's claim for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B) would be a breach of contract

claim, which has a statute of limitations of four years under Texas law. *See Hogan*, 969 F.2d at 145 (applying the Texas four-year-statute-of-limitations for contract claims to plaintiff's claim to enforce ERISA plan rights);[12] *see, e.g., King v. Unum Life Ins. Co. of Am.*, 447 F. App'x 619, 624 (5th Cir. 2011) ("Because King's claim for benefits, which is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), seeks to enforce his rights under the Policy, it is analogous to a state breach of contract claim."). "Under ERISA, a cause of action accrues after a claim for benefits has been made and formally denied." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005).

Section 108(a) of the Bankruptcy Code acts as a tolling provision and "allows a trustee to commence an action in a nonbankruptcy proceeding within the period allowed for such proceeding or within two years after the order for relief, whichever is later." *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 259 (5th Cir. 1991) (citing 11 U.S.C. § 108(a)) (emphasis omitted). Section 108(a) therefore "extend[s] the prescription period for prepetition claims to two years after entry of the order for relief." *Matter of Phillip*, 948 F.2d 985, 987 (5th Cir. 1991). "The purpose of section 108(a) dictates the conclusion that its rights extend only to trustees and debtors-in-possession, and not to creditors. This is so because both trustees and debtors-in-possession have a fiduciary obligation to 'all the creditors of the bankrupt.'" *C.I.T. Const. Inc. of Texas*, 944 F.2d at 260 (citation omitted).

---

[12]"Under Texas law, a four-year statute of limitations applies to breach of contract claims." *TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, No. 3:14-CV-0011-D, 2014 WL 1373507, at *4 (N.D. Tex. Apr. 8, 2014) (citing Tex. Civ. Prac. & Rem. Code § 16.004). Unless an exception applies, the cause of action accrues at the time of the breach. *Id.* (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)); *see also Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App.—Eastland 2002, no pet.) ("A cause of action for breach of contract is generally regarded as accruing when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach.").

Here, the second amended complaint alleges that there are more than 300 claims in dispute for medical services provided by Revolution to Insureds over a period of approximately three years. (doc. 18 at 1.)  Although it does not state when the first claim for payment was denied by Defendants, the earliest medical procedure reflected on the attached spreadsheet was performed by Revolution on January 26, 2015. (*See* doc. 21 at 240.) Even assuming for purposes of this motion only, that Defendants denied a claim for payment on the same day Revolution rendered services, the four-year statute of limitations for the earliest claim would have expired on January 27, 2019. *See* Tex. Civ. Prac. & Rem. Code § 16.004; *Hogan*, 969 F.2d at 145. Revolution filed for bankruptcy on September 27, 2018, which was four months before the expiration date to assert an ERISA or a breach of contract cause of action for the earliest medical claim. Because the prescriptive period had not expired before the filing date of the bankruptcy petition, § 108(a) extended the prescriptive period by two years, until September 27, 2020. As discussed, Plaintiff commenced the adversary proceeding against Defendants on September 18, 2020.

Defendants argue that Plaintiff is not entitled to rely on § 108 because it "is not solely acting as collection agent for the Liquidating Trustee but is pursuing claims related to accounts receivable that it obtained via assignment from an entity that obtained rights to those claims prior to Revolution's bankruptcy." (doc. 36 at 10.) As discussed, Xynergy assigned its rights and interests to the Judgment to Plaintiff, authorizing it to collect the amounts covered by the Judgment, as secured by Revolution's accounts receivable. (*See* Revolution Bankr., doc. 139 at 27-31.) That arrangement does not restrict the application of the tolling provision of § 108(a) in this case. While "a *creditor independently* pursuing a claim can[not] avail itself of the elongated statute of limitation provided by section 108(a)," *C.I.T. Const. Inc. of Texas*, 944 F.2d at 259 (emphasis added), the

24

language and purpose of § 108(a) does not prevent a trustee from benefitting from its tolling provision when he, as here, simultaneously pursues claims on behalf of the liquidated trust of a bankruptcy estate and a secured creditor. This is because Plaintiff, regardless of its acting capacity, continues to have a fiduciary obligation "to all the creditors of the bankrupt." *C.I.T. Const. Inc. of Texas*, 944 F.2d at 260 (citation omitted).[13]

Because it is not apparent from the face of the second amended complaint that some of Plaintiff's claims are barred under the applicable statutes of limitations, Defendants' motion to dismiss based on that affirmative defense should also be denied.[14]

## IV. RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED in part** and **DENIED in part**, and Plaintiff's claims relating to the ERS Plan should be **DISMISSED without prejudice** for lack of jurisdiction.

**SO RECOMMENDED** on this 25th day of October, 2021.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[13]Defendants also contend that Plaintiff "lacks standing as a 'participant or beneficiary' for any plans that contain valid and enforceable anti-assignment provisions." (doc. 27 at 9 (citing 29 U.S.C. §§ 1002(7)-(8), 1132(a)(1)(B)). Because they do not specifically move to dismiss any claims for lack of standing or brief the standing issue, it is not considered. *See Muniz v. El Paso Marriott*, 773 F. Supp.2d 674, 684 (W.D. Tex. 2011) (citing cases) (finding that failure to brief an argument constitutes waiver); *Hernandez v. Duncanville Sch. Dist.*, No. 3:04-CV-2008-BH-B, 2005 WL 3293995, at *20 n.30 (N.D. Tex. Dec. 5, 2005) (declining to address issue not briefed).

[14]Because it is recommended that Defendants' motion to dismiss some claims as time-barred be denied, consideration of the sur-reply addressing the limitations argument is unnecessary, so the motion for leave to file a sur-reply is denied as moot.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE